UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 8:07-cv-1575-JDW-MAP |
| | ) |
| vs. | ) |
| | ) |
| DANIEL L. PREWETT; FRANCES CARLSON; | ) |
| ELIZABETH GEORGE; NATALIE SWANEY; | ) |
| ELSIE CHOUINARD; | ) |
| SIMPLE FINANCIAL SOLUTIONS; | ) |
| JH ACCOUNTING SERVICES, and | ) |
| JH INVESTMENT SERVICES, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PERMANENT INJUNCTION

Findings of Fact

This Court has granted the United States' motion for default judgment against Defendants

Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services, Inc.

(Dkt. 34). The findings of fact and reasons for entry of permanent injunction against Defendants

Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services, Inc.

are set forth below.[1]

This Court has jurisdiction over the subject matter and parties in this case. Venue is proper

under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim

occurred in this judicial district.

Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services,

---

[1] The findings of fact are made only for the purpose of entering default judgment against Defendants Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services, Inc.

-1-

Inc. conduct business at offices located at 5753 Beneva Road, Sarasota, Florida, within this judicial district.

On October 7, 1993, a corporation that Defendant Prewett had recently created, Simple Financial Solutions, Inc., ("SFS"), purchased the two Jackson Hewitt franchises from Jackson Hewitt, Inc.  The check used to pay for the franchises was signed by Prewett's wife, Elizabeth George, and drawn on an account held by Prewett.

Prewett signed Allan Scott's name on all SFS incorporating documents that were filed with the Secretary of State of Florida.  Those documents list Scott as the sole shareholder and director of SFS, but Scott never participated in the management or operation of SFS. Scott was merely the nominee or alter ego of Prewett.  Elizabeth George was the only other corporate officer listed on SFS's corporate filings.  Prewett was the true owner and director of SFS, but concealed his ownership and management of the corporation.

Prewett signed Scott's name on the franchise agreement between Jackson Hewitt Tax Service and SFS.  The agreement required SFS to prepare only individual state and federal income tax returns, not corporation, partnership, or other returns.

In June 1997, Prewett formed Defendant JH Accounting Services, Inc., for the purpose of preparing income tax returns for partnerships, corporations, and other entities.  JH Accounting Services' articles of incorporation listed 5777 Beneva Road, Sarasota, Florida as the entity's address. That was the address where the SFS Jackson Hewitt franchise operated.  Allan Scott was not listed as an officer of JH Accounting Services.  Rather, Prewett was listed as the president, secretary, and treasurer of JH Accounting Services.

In September 1997, Prewett formed a third corporation, Jackson Hewitt Investment Services, Inc. ("JHIS").  He did not obtain permission from Jackson Hewitt Tax Services, Inc. for JHIS to use

the name "Jackson Hewitt" in the corporation's name. JHIS shared the same offices as the SFS Jackson Hewitt franchise. JHIS was purportedly organized to promote various tax, financial, and real estate investments to Prewett's customers. The corporate documents filed with the Florida Secretary of State listed Prewett as JHIS's vice-president, secretary, director, and treasurer. Prewett forged Allan Scott's signature on the JHIS corporate filing documents. Scott was never aware that he was listed as an officer of JHIS.

Prewett named his investment company "Jackson Hewitt Investment Services," and the related accounting firm "JH Accounting Services," to cause customers to believe the companies were affiliated with or approved by Jackson Hewitt Tax Service, Inc., the franchiser. Similarly, Prewett further misled customers by operating JH Accounting and JHIS at the SFS Jackson Hewitt franchise location, 5777 Beneva Road, Sarasota, Florida. Later, when Jackson Hewitt Tax Services, Inc, the franchiser, learned of Prewett's arrest on charges of alleged drug dealing and money laundering, Jackson Hewitt Tax Services ordered Prewett to remove the name "Jackson Hewitt" from the name of JHIS because JHIS was not authorized to use the name "Jackson Hewitt." In response, Prewett changed JHIS's name from "Jackson Hewitt Investment Services" to "JH Investment Services." It remains in business using that name today.

Employees of SFS, JH Accounting, and JHIS prepared false income tax returns for customers to fraudulently eliminate or reduce their customers' reported income tax liabilities.

To promote himself and his businesses (SFS, JH Accounting, and JHIS), Prewett made numerous false claims to prospective customers about his education and experience. For example, Prewett falsely boasted to customers that he held a Ph.D. degree and was an attorney licensed in New York and Florida.

From at least 2002 on, Prewett and George supervised employees who worked at SFS, JH

-3-

Accounting, and JHIS, including the other individual defendants and seasonal employees. Swaney began working for Prewett and his three corporations in early 2003. She is a licensed Certified Public Accountant.

From 2002 until Prewett's arrest on drug dealing and money laundering charges in late 2006, the SFS Jackson Hewitt franchise prepared approximately 7,500 individual federal income tax returns annually. Many of the individual income tax returns that Defendants prepared falsely and fraudulently understated the customers' tax liabilities. Those understatements were not caused by loose controls or carelessness; Defendants intentionally made the understatements in a concerted and willful effort to help their customers under-report their income and their tax liabilities.

Defendants prepared false and fraudulent Schedules A and C for federal income tax returns prepared for their customers, and also bogus claims for refundable tax credits.

Defendants also prepared corporate and partnership federal income tax returns containing bogus and false information.

Defendants helped SFS Jackson Hewitt customers organize partnerships and corporations to improperly reduce or eliminate the customers' reported tax liability. To accomplish this, Defendants fraudulently deducted expenses on corporate, partnership, or entity tax returns. Defendants then improperly claimed the same deductions on the customers' individual income tax returns.

In many cases, the duplicate expenses claimed on both the entity and individual tax returns were fraudulent because they were deductions for personal expenses with no valid business purpose. In other words, the expenses were not deductible even once, much less twice.

After being questioned about his fraudulent tax preparation practice by the IRS, Prewett admitted that he helped customers form over 1,000 sham LLCs. In each instance, Prewett charged

customers to form the sham entity, and then directed them to transfer personal assets to the entity. Thereafter, Prewett or his staff fraudulently reduced the customers' reported tax liabilities by improperly deducting costs associated with personal non-business assets and activities as business expenses.

Prewett also misrepresented to the sham-LLC customers that JH Accounting Services held a valid license to perform accounting services in Florida.

Some time before April 22, 2003, JH Accounting Services applied for a firm license to practice public accounting under the false representation that Natalie Swaney, rather than Prewett owned JH Accounting.  The Florida Board of Accountancy issued a license to JH Accounting Services on April 22, 2003, based on that false representation.

As early as 2002, however, Prewett falsely represented that JH Accounting Services was a licensed accounting firm, and the firm performed audits before the license was issued.  On February 18, 2003, the Florida Board of Accountancy received a complaint against Natalie Swaney and JH Accounting Services indicating that an audit had been completed in 2002 showing numerous errors. In response, Swaney filed an affidavit executed by Prewett stating that he had completed the audit described in the complaint, and had signed Swaney's name without her knowledge and consent.  On June 10, 2004, JH Accounting Services's firm license to practice public accounting was revoked. Swaney was reprimanded by the Florida Board of Accountancy and was ordered to pay costs related to the complaint filed against her.

In October of 2006, state law enforcement officers arrested Prewett, who was charged with participating in a cocaine-distribution ring and laundering drug money through JHIS.  The arrest and charges were widely publicized and shortly thereafter came to the attention of Jackson Hewitt Tax Services, Inc.  Shortly after that, Jackson Hewitt Tax Services, Inc. pressured Scott and Prewett to

cause SFS to sell its Jackson Hewitt franchises by December 1, 2006. SFS did sell the franchises by that date, and thereafter has not operated as a Jackson Hewitt franchise.

After numerous lawsuits were filed against Prewett, Elizabeth George filed documents with the Florida Secretary of State to remove Prewett's name as an officer of SFS, JH Accounting Services, and JHIS. In December 2006, Elsie Chouinard formed Round the Clock Accounting ("Round the Clock"), an entity that purchased the assets of JH Accounting. On information and belief, Prewett advised and assisted Chouinard in forming Round the Clock to perpetuate the same schemes he had previously used to defraud the IRS, using her as his alter ego. The sales agreement stated that Chouinard paid $1,000 for the JH Accounting business, and that she would pay Prewett an additional $199,000 through an installment agreement.

Carlson, Chouinard, and Swaney continue to prepare income tax returns for customers. Prewett and George continue to manage and direct SFS, JH Accounting, and JH Investment Services to continue their tax-fraud scheme.

From 1995 on, Prewett operated several Jackson Hewitt stores within the Sarasota area, along with his wife, Elizabeth George. From 2002 on, Prewett, George, and the remaining Defendants' tax-preparation business for individuals, partnerships, and corporations has focused on improperly reducing their customers' reported income tax liabilities by preparing and filing false income tax returns.

Defendants' fraudulent tax preparation activities included filing false individual, partnership, and corporate tax returns for at least the past four years. During that period, Defendants actively encouraged, advised, and instructed their employees to prepare tax returns that understated income, inflated expenses, and included false claims for the earned income tax credit (EITC).

For customers who had only individual income tax returns prepared by Prewett's Jackson

-6-

Hewitt franchise, Defendants prepared Schedules A and Schedules C that included fictitious or inflated expenses to reduce or eliminate the customers' wage income. These customers typically were low-to-moderate income earners living in the Sarasota area. In 2004, Prewett described the practice at the SFS Sarasota Jackson Hewitt franchise by stating, "we can be as aggressive as you want to be on your taxes." Elsie Chouinard clarified that being "aggressive" meant that if a customer's tax return reported taxes owing, additional false expenses were added to eliminate the amount of tax due, or to show a refund, because their customers "would not accept" paying taxes. In addition, at a gathering of Prewett's and SFS's employees, Frances Carlson stated that when customers were close to the EITC income threshold limits, she improperly directed employees to "put away the 1099 income statement they received, and not to include that in income," which allowed the customers improperly to claim the maximum EITC.

Defendants also prepared for customers individual and entity income tax returns with duplicate expenses claimed on both returns. This pattern was repeated numerous times by each of the Defendants.

In many cases, Defendants omitted income on the customers' individual income tax returns that was reported as paid to them on the entity returns. Defendants also falsely and fraudulently reduced customers' tax liability by claiming the same deductions on the corporate and individual income tax returns.

In addition, Defendants improperly reported the distribution paid from the customers' corporation as "gross receipts" on Schedule C, rather than S corporation income as required. Defendants' method of improperly characterizing that income also had the effect of falsely and fraudulently reducing, or eliminating in some cases, the customers' reported employment tax obligations. That is, since Defendants caused the distribution paid from the corporation to be

mischaracterized as gross receipts, FICA or FUTA taxes were not paid on those amounts.

Defendants also engaged in false and deceptive conduct in dealing with their customers and the IRS. On nearly every individual federal income tax return that Defendants prepared, they listed Daniel Prewett as the customers' "third-party designee" for the IRS to contact with questions. When IRS audits were initiated, Prewett filed IRS Form 2848, "Power of Attorney" forms falsely declaring under penalty of perjury that he was an attorney licensed to practice law in Florida and New York. Prewett's misrepresentation of his qualifications to both his customers and the IRS is false and deceptive conduct subject to injunction under IRC § 7407(b)(1)(B).

During an IRS audit of another customer's individual income tax return, an IRS revenue agent questioned Swaney and Prewett about the customer's ability to pay his substantial personal expenses, since, although he was a physician, he had reported only $37,000 of taxable income for 2003. Prewett and Swaney had no explanation for the discrepancy, and concealed from the revenue agent the fact that the customer was the 100% shareholder of his medical practice, which had significant income. The revenue agent's investigation further revealed that the corporate medical practice was improperly paying and deducting the customer's non-deductible personal expenses, including legal fees associated with his divorce, the cost of his automobile, and his sport boat. None of this was reported on the customer's income tax return. Swaney told the revenue agent that Swaney "did not want to complicate the audit" by disclosing the customer's interest in the corporation.

Since at least 1999, Prewett has actively encouraged, advised, and instructed customers to create fictitious businesses to claim non-deductible personal expenses as valid business expense deductions.

Defendants prepared false and fraudulent individual and entity income tax returns, LLC

-8-

incorporating documents for fictitious businesses, individual income tax returns, and other documents containing false information. Defendants knew or had reason to believe that the returns they prepared would be used in connection with material matters arising under the internal revenue laws.

Prewett engaged in this unlawful conduct as an owner and officer of SFS, JH Accounting, and JHIS. In that role, Prewett boasted having significant experience related to business and tax law, and charged customers to form LLCs as a mechanism to illegally reduce or eliminate their reported federal tax obligations.

During an interview with the IRS, Prewett admitted that he had set up thousands of LLCs for customers and charged significant sums for those services. As part of the scheme, Prewett targeted wealthy people such as physicians and dentists.

In one case, Prewett organized an LLC for a dentist who worked in the Sarasota area. The address listed on the LLC's incorporating document was the same as Prewett's SFS Jackson Hewitt franchise. On the LLC's income tax returns, Defendant Swaney claimed deductions for the dentist's vacation home, motorcycles, ATVs, boats, and other personal assets that had no business purpose.

The false businesses that Defendants reported on their customers' income tax returns were bogus entities created to help evade federal income taxes by falsely deducting personal expenses as purported business expenses.

Defendants knew the federal income tax returns they prepared for customers fraudulently reduced their customers' reported tax liabilities. Defendants knew that their customers were not allowed to deduct personal expenses on their federal income tax returns. Defendants also knew that their customers have been the subject of IRS audits because the income tax returns they prepared contain false and fraudulent information.

The tax-fraud schemes that Defendants promoted and their fraudulent income tax return preparation services harmed the government by fraudulently reducing their customers' reported tax liabilities.

The IRS is harmed because it must dedicate scarce resources to detecting and examining inaccurate returns filed by Defendants' customers, prepare substitute returns for customers failing to file tax returns, and attempt to recover unpaid taxes. Defendants have caused losses to the Treasury exceeding $80 million since 1994. The tax losses attributable to the fraudulent tax returns prepared for partnerships, corporations and other entities might exceed $50 million since 1994.

Thus, the total estimated tax losses attributable to Defendants' fraudulent tax return preparation activities exceeds $130 million.

Defendants' customers have been harmed because they have paid Defendants fees to prepare tax returns that understate their correct federal income tax liabilities. Customers who receive erroneous refunds then must pay back the taxes plus interest. Regardless of whether the IRS issues a refund, customers may have to pay penalties and some customers could also face criminal prosecution.

Conclusions of Law

Based upon the factual findings and evidence presented by the United States, this Court finds that Defendants SFS, JH Accounting Services, and JHIS engaged in conduct subject to penalty under I.R.C. § 6694.

Based upon the factual findings and evidence presented by the United States, this Court finds that Defendants SFS, JH Accounting Services, and JHIS engaged in conduct subject to penalty under I.R.C. § 6695.

This Court finds that, unless enjoined by this Court, Defendants SFS, JH Accounting

-10-

Services, and JHIS are likely to continue to engage in this conduct and continue to organize and sell their tax-fraud program. Injunctive relief is appropriate under 26 U.S.C. § 7408.

Based upon the factual findings and evidence presented by the United States, this Court finds that, in organizing and selling their program, Defendants SFS, JH Accounting Services, and JHIS have made false and fraudulent statements regarding the tax benefits associated with participation in the programs that they know or have reason to know are false or fraudulent as to material matters within the meaning of 26 U.S.C. § 6700. Defendants SFS, JH Accounting Services, and JHIS have thus engaged in conduct subject to penalty under 26 U.S.C. § 6700.

This Court finds that Defendants SFS, JH Accounting Services, and JHIS through the actions described above, have engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws. Unless Defendants SFS, JH Accounting Services, and JHIS are enjoined, the IRS will have to devote substantial time and resources to identify and locate their customers, and then construct and examine those persons' tax returns and liabilities. The burden of pursuing all individual customers may be an insurmountable obstacle, given the IRS's limited resources.

This Court finds that, if Defendants SFS, JH Accounting Services, and JHIS are not enjoined, they likely will continue to engage in conduct that obstructs and interferes with the enforcement of the internal revenue laws. The United States is entitled to injunctive relief pursuant to 26 U.S.C. § 7402(a) to prevent such conduct.

## INJUNCTION ORDER

Pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, this Court enters a permanent injunction prohibiting Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services, Inc., and their representatives, employees, agents, servants, attorneys and those persons and

entities in active concert or participation with them, from directly or indirectly:

    (1)    Acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns for any person or entity other than themselves;

    (2)    Appearing as representatives on behalf of any person or organization before the Internal Revenue Service;

    (3)    Understating customers' tax liabilities as penalized by IRC § 6694;

    (4)    Failing to provide a tax identification number or sign tax returns for which Defendants are tax-return preparers, and other conduct subject to penalty under IRC § 6695;

    (5)    Engaging in activity subject to penalty under IRC § 6701, including preparing or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that they know would result in an understatement of another person's tax liability;

    (6)    Organizing, promoting, marketing, or selling any tax shelter, plan or arrangement that advises or assists customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

    (7)    Falsely informing customers that they may continue to control and receive beneficial personal enjoyment from assets irrevocably transferred to partnerships, corporations, or other entities;

    (8)    Falsely informing customers that their personal assets can be transferred to various business entities to be claimed as personal expenses to reduce their federal tax liability; and

(9)     Engaging in any other conduct subject to any penalty under the Internal Revenue

Code, or any conduct that interferes with the administration and enforcement of the

internal revenue laws.

The Court retains jurisdiction for the purpose of enforcing this permanent injunction that is

entered against these Defendants.

Done and Ordered this _24th_ day of April, 2008.


_JAMES D. WHITTEMORE_
UNITED STATES DISTRICT JUDGE

copies: counsel of record,
        Simple Financial Solutions, Inc., JH Accounting Services, Inc., and JH Investment Services, Inc.
        c/o Elizabeth George, Resident Agent
        4942 Three Oaks Blvd. Sarasota, FL 34233