UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                  Case No. 8:07-cv-1575-T-33MAP

DANIEL L. PREWETT, et al.,

       Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Natalie Swaney's Motion to Dissolve Permanent Injunction (Doc. # 64), filed on May 14, 2012. The United States filed a response in opposition to the motion (Doc. # 65) on May 29, 2012. With leave of Court, Swaney filed a reply to the United States' response (Doc. # 69) on September 27, 2012. Also with leave of Court, the United States filed a surreply (Doc. # 70-1) on October 3, 2012. On December 18, 2012, the Court held a hearing and heard oral argument on the motion. For the reasons that follow, the motion is denied.

**I.   Background**

On September 5, 2007, the United States commenced this action for permanent injunctive relief against Swaney and

seven other defendants.  (Doc. # 1)  The complaint alleged that Swaney, along with the other defendants, participated in a $130 million IRS tax fraud scheme.  According to the complaint, Swaney used a number of schemes to under-report customers' tax liabilities, such as helping customers to create fictitious businesses in order to disguise personal expenditures as business deductions.  Id. at ¶¶ 26-29.  The complaint further alleged that Swaney had engaged in false and deceptive conduct before the IRS.  Id. at ¶ 50.

The complaint's first count sought an injunction against Swaney under Section 7407 of the Internal Revenue Code (IRC).  Id. at 19-20.  That section authorizes a court to permanently enjoin a person from acting as a federal-tax-return preparer if the person has continually or repeatedly (a) engaged in fraudulent or deceptive conduct that interferes with the proper administration of the internal revenue laws or (b) engaged in conduct that is subject to penalty under IRC §§ 6694 or 6695.  See IRC § 7407(b).  Section 6694 imposes a penalty if a return preparer knew or should have known that the return she prepared would understate tax liability due to an unrealistic or frivolous position.  See IRC § 6694(a).

The complaint's second count sought an injunction against Swaney under IRC § 7408. (Doc. # 1 at 20-21). That section authorizes a court to enjoin a person from engaging in any conduct that is subject to penalty under the IRC if the person has engaged in "specified conduct," which is defined to include any conduct that is subject to penalty under, among other sections, IRC § 6701. See IRC § 7408(a), (c).

The complaint's third count sought an injunction against Swaney under IRC § 7402. (Doc. # 1 at 22). That section authorizes a court to issue any order or injunction that is necessary or appropriate for the enforcement of the internal revenue laws. See IRC § 7402(a).

On January 26, 2009, Swaney and her counsel signed a stipulation by which Swaney consented to the Court's issuance of an order that would impose the three injunctions sought in the complaint. (Doc. # 52). The stipulation expressly stated that the IRS might later assess penalties against Swaney based on the conduct alleged in the complaint, but it also reserved Swaney's right to challenge those assessments. Id. at 2. This Court then entered a Final Judgment that incorporated the

stipulation and imposed the three injunctions. (Doc. # 53).

Approximately seven months after the Final Judgment was entered, the IRS assessed $86,000 in § 6701 penalties against Swaney. The IRS made this assessment based on the determination that Swaney had prepared over 30 tax returns with actual knowledge that the returns would understate others' tax liability. Swaney challenged that assessment by commencing an action in the United States District Court for the Middle District of Florida. After a six-day trial, the jury found that the United States had not established that Swaney had actual knowledge that the tax returns at issue would understate another person's tax liability.

On May 14, 2012, Swaney filed the instant motion, which seeks an order dissolving the injunctions contained in the Final Judgment. Swaney contends that the jury's finding constitutes a significant change in the factual circumstances that gave rise to the injunctions and thus provides grounds for the Court to dissolve those injunctions in accordance with Federal Rule of Civil Procedure 60(b).

II. **Analysis**

Swaney's request for relief from a final judgment is governed by Federal Rule of Civil Procedure 60(b). That rule provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

A district court has broad discretion to grant relief from a final judgment in circumstances where continued application of the judgment would be inequitable. See Johnson v. Florida, 348 F.3d 1334, 1341 (11th Cir. 2003). A party requesting relief under Rule 60(b) "bears a heavy burden of persuasion" to show that the modification is necessary. Id.

In evaluating Rule 60(b) motions, the Supreme Court has articulated two different standards: the Swift standard and the Rufo standard. In United States v. Swift & Co., 286 U.S. 106, 119 (1932), defendant meatpackers agreed to a consent decree which enjoined them from economically manipulating the meat-packing industry. Id. Ten years later, the meatpackers sought a modification of the consent

decree.  _Id._ at 115-16.  The Supreme Court found that the meatpackers had failed to meet their burden of proof because they were in the same position to manipulate transportation costs and fix grocery prices as they had been ten years prior when they entered into the consent decree.  _Id._  In reaching this conclusion, the Supreme Court distinguished the meatpackers' case from one in which there are genuine changes requiring modification.  _Id._ at 114-15 ("Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.").

In _Rufo v. Inmates of Suffolk County Jail_, 502 U.S. 367, 380 (1992), the Supreme Court clarified that _Swift_'s "grievous wrong" language "was not intended to take on a talismanic quality, warding off virtually all efforts to modify consent decrees."  Instead, the Supreme Court determined that "[Rule 60(b)], in providing that, on such terms as are just, a party may be relieved from a final judgment or decree where it is no longer equitable that the judgment have prospective application, permits a less stringent, more flexible standard."  _Id._  Specifically, the Supreme Court found that a more flexible approach was

essential to achieving the goals of institutional reform litigation, which federal courts had addressed with increasing frequency since Brown v. Board of Education, 347 U.S. 483 (1954).

Accordingly, the Supreme Court held that Swift's "grievous wrong" standard does not apply to requests to modify consent decrees stemming from institutional reform litigation. Rufo, 502 U.S. at 393. Instead, the Supreme Court adopted a more flexible standard pursuant to which "a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." Id. Rufo provided three examples of instances warranting Rule 60 relief under this standard: (1) when changed factual conditions make compliance with the decree substantially more onerous, (2) when a decree proves to be unworkable because of unforeseen circumstances, and (3) when enforcement of the decree without modification would be detrimental to the public interest. Id. at 384.

The Eleventh Circuit has since applied the "changed circumstances" standard established in Rufo to determine

whether modification or termination of a consent decree is appropriate.   See Johnson, 348 F.3d at 1342-45; United States v. City of Miami, 2 F.3d 1497, 1503-06 (11th Cir. 1993).   In United States v. City of Miami, the Eleventh Circuit provided that, in considering whether to modify a consent decree, the first step was to determine the "basic purpose" of the decree.   City of Miami, 2 F.3d at 1504.   If the proposed modification was directed to that basic purpose, it would frustrate the purpose and therefore should not be permitted.   Id. at 1504-05.   On the other hand, if the proposed modification was directed only to "one of several means of accomplishing the purpose . . . or one of several means of measuring compliance," then the modification might be permitted.   Id.   In Johnson, the Eleventh Circuit characterized City of Miami as "merely a gloss or a method of applying Rufo, not a distinct standard."   Johnson, 348 F.3d at 1344.

Generally, since the Supreme Court's decision in Rufo, "there has been considerable disagreement among the Courts of Appeals on whether the Rufo standard also applies to modifications of consent decrees arising out of non-institutional-reform litigation . . . ."   In re Consolidated Non-Filing Ins. Fee Litigation, Nos. 2:96-md-

1130-MEF,   2:94-cv-699-UWC,   2:97-cv-832-UWC,   2010   WL
1250873, at *2 (M.D. Ala. Mar. 24, 2010) ("Some courts have
held that the Rufo standard applies to all Rule 60(b)(5)
motions to modify consent decrees.  Other courts have held
that the more stringent 'grievous wrong' standard, first
announced by the Supreme Court in United States v. Swift &
Co., applies instead.  Still other courts have held that
the Rufo and Swift standards are two poles along a spectrum
of possible standards and that courts must identify the
proper standard on this continuum by considering and
balancing all of the relevant equitable factors in each
particular case.") (internal citations omitted).

In evaluating the circumstances of the instant case,
the Court finds the reasoning of National Organization for
Women v. Scheidler, No. 86-C-7888, 2007 WL 1280654 (N.D.
Ill. Apr. 30, 2007), persuasive.  In Scheidler, defendant
Randall Terry entered into an agreement to refrain from
interfering with the right of plaintiffs, several health
care clinics, to perform abortions and other activities
with which Terry personally disagreed.   Id. at *1.
Although Terry chose to enter into the agreement, the
remaining defendants took their claims to trial and
ultimately obtained a judgment in their favor.   Id. at *2.

As a result, Terry moved to vacate the consent decree, reasoning that the decree should no longer apply since it had been established that the clinic never actually had a sufficient claim against the defendants.  Id.

Applying Rufo, the court denied Terry's motion and reasoned that "Terry agreed to refrain from engaging in the acts that precipitated this action.  The injunction embodied in the Order is necessary to ensure that Terry keeps his end of the bargain."  Id. at *5.  The Scheidler court additionally referenced the guiding principle that "a party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient."  Id.  Consistent with this observation, the court ultimately found that Terry "voluntarily settled his dispute with the Plaintiffs and is bound to live with the consequences of his decision."  Id. at *6.

Like the defendant in Scheidler, Swaney voluntarily consented to the injunctions at issue, and must live with the consequences of that decision.  The Court need not decide whether the Rufo or the Swift standard applies in the instant case, because the Court finds that Swaney has failed to meet even the more relaxed burden described in Rufo and interpreted by the Eleventh Circuit in City of

Miami and Johnson.   Rather, Swaney argues only that this Court "has substantial discretion to grant relief under Rule 60(b)," and that "[Rule 60] has been referred to as 'the grand reservoir of equitable power to do justice in a particular case.'"   (Doc. # 69 at 2) (quoting F.D.I.C. v. United Pacific Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998)).

By consenting to the injunctions proposed by the United States, Swaney agreed that she would forever refrain from engaging in certain types of conduct, such as preparing tax returns for others or representing others before the IRS.   The Court finds that the "basic purpose" of the injunctions was indeed to prohibit Swaney from engaging in the conduct described therein, and that dissolving the injunctions would certainly frustrate that purpose.   Additionally, Swaney has alleged no facts to suggest that enforcement of the relevant judgment has become unworkable due to unforeseen circumstances, that compliance with the judgment has become substantially more onerous, or that continued enforcement of the judgment would be detrimental to the public interest.

In this case, the Court finds that the public interest is best served by keeping the injunctions in place.

Settlements further the public interest, and the relief that Swaney seeks, if granted, would not only undermine the settlement to which she consented, but it also might discourage settlements of future injunction actions against tax-return preparers. Furthermore, if a tax-scheme promoter or return preparer could undo a consent injunction simply because the promoter or preparer later prevailed in a penalty suit involving only a portion of the conduct alleged in the initial complaint seeking the injunction, the IRS might hesitate to assess penalties that should rightfully be assessed.

Lastly, the Court finds unconvincing Swaney's attempts to equate the material issues resolved in the penalty suit with those in the original injunction action. As explained above, Swaney cites the jury's finding in her penalty suit as a significant change in fact that renders the injunctions inequitable. This position ignores the differences between the claims that were settled in the injunction suit and the claims that were litigated in the penalty suit. In the penalty suit, the jury was asked to determine whether Swaney had *actual knowledge* that the returns she prepared would understate her clients' tax liabilities. While the United States made this claim in

the injunction suit, its claims in the injunction suit also rested on allegations that Swaney prepared returns that she reasonably *should have known* would result in liability understatements, and additionally that Swaney engaged in false and deceptive conduct before the IRS. Thus, the jury's conclusion concerning Swaney's actual knowledge fails to influence the viability of the United States' claims for injunctions under IRC § 7407 or IRC § 7402.

## III. <u>Conclusion</u>

Swaney's successful defense against the § 6701 penalties is not a change in fact or law that warrants modification or dissolution of the Final Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Natalie Swaney's Motion to Dissolve Permanent Injunction (Doc. # 64) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u> day of January, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record